Slip Op. 12-152

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| R.T. FOODS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Gregory W. Carman, Judge <br><br> Court No. 09-00455 |

[*Plaintiff's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.*]

*Peter S. Herrick* of Miami, FL, for Plaintiff.

*Beverly A. Farrell*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for Defendant. On the briefs were *Stuart F. Delery*, Assistant Attorney General, *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, United States Department of Justice, and *Beth C. Brotman*, Of Counsel, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection.

December 14, 2012

OPINION

**CARMAN, JUDGE:** This matter is before the Court on a Motion for Summary Judgment by Plaintiff R.T. Foods, Inc. ("Plaintiff" or "R.T. Foods") and a Cross-Motion for Summary Judgment by Defendant United States ("Defendant" or "Customs"). The

parties dispute the correct tariff classification of the subject merchandise—frozen tempura-battered vegetable mixtures from Thailand—imported by Plaintiff. For the reasons set forth below, Plaintiff's motion is denied, and Defendant's cross-motion is granted.

## FACTUAL BACKGROUND

Plaintiff is an importer of the two products at issue: Tempura Vegetables ("Vegetable Medley") and Vegetable Bird's Nests ("Bird's Nests") from Thailand. Pl.'s Statement of Material Facts as to Which No Genuine Issue Exists ("Pl. Facts") ¶¶ 2–3; Def.'s Statement of Material Facts as to Which No Genuine Issue Exists ("Def. Facts") ¶¶ 2–4. This case involves twenty-four entries into the ports of Long Beach, California and Boston, Massachusetts between October 2007 and August 2008. Summons, ECF No. 1; Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. ("Def. Cross-Mot.") at 2.

The parties do not dispute the identity of the subject merchandise: frozen tempura-battered vegetable mixtures sold under the names of "Vegetable Bird's Nests" and "Tempura Vegetables." Bird's Nests consist of carrots, onion and kale, which are cut julienned-style, mixed together, dipped in tempura batter, deep fried, flash frozen and packaged eight in a retail tray. The name of the product is eponymous with the appearance of the product. Def. Cross-Mot. at 2, Def. Ex. 2; Pl. Mot. at 2–3.

Vegetable Medley includes eighteen pieces of tempura: three Bird's Nests, three pieces of sweet potato, three pieces of carrot, three pieces of wing bean, three pieces of long or green bean, and three pieces of eggplant. Def. Cross-Mot. at 2. The individual vegetables in the Vegetable Medley are also dusted with tempura batter, deep fried, flash frozen and packaged in a retail box. *Id.*

Plaintiff imported twenty-four entries of subject merchandise in this case, ten into the port of Boston and fourteen in the port of Long Beach. Def. Cross-Mot. at 3. Customs classified the ten Boston entries and three of the Long Beach entries under the Harmonized Tariff Schedule of the United States ("HTSUS") tariff classification of 2004.90.85, which provides for "Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, frozen, other than products of heading 2006: Other vegetables and mixtures of vegetables: Other: Other, including mixtures," with a duty rate of 11.2%. Def. Cross-Mot. at 3.

Customs notes that eleven[1] of the entries into the port of Long Beach were liquidated under Plaintiff's proposed tariff classification of 2106.90.99, HTSUS, which provides for "Food preparations not elsewhere specified or included: Other: Other:

---

[1] These eleven entries (277-0117421-4, 277-0117498-2, 277-0117803-3, 277-0118263-9, 277-0118077-3, 277-0118462-7, 277-0118901-4, 277-0119300-8, 277-0119301-6, 277-0119997-1 and 277-0116454-6) were liquidated under Plaintiff's proposed classification of subheading 2106.90.99, HTSUS. Customs avers that "this duty-free liquidation was in error and does not reflect Customs' position of the classification/rate of duty of the subject merchandise." Def. Facts ¶¶ 12-13.

Court No. 09-00455                                                                                          Page 4

Other: Frozen," with a duty-free preference for products from Thailand. Def. Facts ¶ 13; Def. Cross-Mot. at 2–3. Although the other thirteen entries were liquidated at the duty rate of 11.2%, these eleven entries were in fact, whether accidentally as Customs claims or properly as Plaintiff claims, liquidated with no tariff rate. Pl. Facts ¶ 19; Def. Facts ¶ 13.

On March 24 and 25, 2009, Plaintiff timely protested Customs' classification for all twenty-four entries, asserting that the proper classification of its subject merchandise is subheading 2106.90.99, HTSUS. *See* Summons, ECF No. 1. Customs issued notices of denials in response to Plaintiff's protests on the following dates: Protest Number 2704-09-100924[2] on August 14, 2009; Protest Number 2704-09-100996[3] on September 23, 2009; and Protest Number 0401-09-100048[4] on April 1, 2009. *Id.*; Def.'s Cross-Mot. at 3. Plaintiff commenced this action on October 21, 2009. Summons, ECF No. 1.

---

[2] Protest Number 2704-09-100924 covers the following three entries into the port of Long Beach: 277-0116601-2, 277-0116682-2 and 277-0119690-2.

[3] Protest Number 2704-09-100996 covers the following eleven entries into the port of Long Beach: 277-0117421-4, 277-0117498-2, 277-0117803-3, 277-0118263-9, 277-0118077-3, 277-0118462-7, 277-0118901-4, 277-0119300-8, 277-0119301-6, 277-0119997-1 and 277-0116454-6.

[4] Protest Number 0401-09-100048 covers the following ten entries into the port of Boston: 281-0107098-6, 281-0107614-0, 281-0108049-8, 281-0108452-4, 281-0108451-6, 281-0109110-7, 281-0109447-3, 281-0111268-9, 281-0111338-0 and 281-0112080-7.

### JURISDICTION AND STANDARD OF REVIEW

The Court has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930" pursuant to 28 U.S.C. § 1581(a) (2006).[5] Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." USCIT R. 56(c).

Although Customs usually enjoys a statutory presumption of correctness in its classification decisions, this does not apply to pure issues of law in a summary judgment motion before the Court. *Universal Elec. Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997). The Court "does not defer to Customs' decisions because it has been tasked by Congress to conduct a *de novo* review, and to determine the correct classification based on the record made before it." *Universal Elec.*, 112 F.3d at 493; *see* 28 U.S.C. § 2640(a). Ultimately, the Court's "duty is to find the *correct* result, by whatever procedure is best suited to the case at hand." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) (emphasis in original).

Resolution of a disputed classification entails a two-step process: (1) ascertaining the proper meaning of specific terms in the relevant tariff provisions; and (2)

---

[5] All references to the United States Code hereinafter refer to the 2006 edition, unless otherwise specified.

determining whether the merchandise at issue comes within the description of such terms as properly construed. *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999). When "the nature of the merchandise is undisputed, . . . the classification issue collapses entirely into a question of law." *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006) (citations omitted). Correct classification of imported merchandise is ultimately a question of law. *Pillowtex Corp.*, 171 F.3d at 1373.

## DISCUSSION

The threshold question in any judicial proceeding is whether the court has jurisdiction to hear the case. Defendant raises jurisdictional issues in its cross-motion, and therefore the Court first addresses the question of jurisdiction as to the three protests at issue. The Court then decides the proper classification of the subject merchandise for the entries over which it has jurisdiction.

### A. Jurisdiction

#### 1. Protest Number 0401-09-100048

Defendant raises a statute of limitations defense for Protest Number 0401-09-100048. While this court has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest" pursuant to 28 U.S.C. § 1581(a), there is a statute of limitations on the commencement of an action pursuant to 28 U.S.C. § 2636(a)(1):

> (a) A civil action contesting the denial, in whole or in part, of a protest under section 515 of the Tariff Act of 1930 is barred unless commenced in

accordance with the rules of the Court of International Trade—

> (1) within one hundred and eighty days after the date of mailing of notice of denial of a protest under section 515(a) of such Act.

For jurisdiction to attach, a summons must be filed within 180 days after the notice of a denial of protest is mailed. In the instant case, Plaintiff filed three protests to cover the twenty-four entries and Customs issued denials on the following dates: Protest Number 2704-09-100924 on August 14, 2009; Protest Number 2704-09-100996 on September 23, 2009; and Protest Number 0401-09-100048 on April 1, 2009. See Summons, ECF No. 1; see also Def.'s Cross-Mot. at 3. The summons commencing this action was filed on October 21, 2009. See Summons, ECF No. 1. Accordingly, the protests denied on August 14, 2009 and September 23, 2009 are timely; however, the protest denied on April 1, 2009 falls outside the limitations period by approximately twenty days. Therefore, the Court is barred by 28 U.S.C. § 2636(a)(1) from hearing a challenge to the denial of Protest Number 0401-09-100048.

On April 28, 2009, Plaintiff filed a request to Customs to have its denial of Protest Number 0401-09-100048 set aside pursuant to 19 U.S.C. § 1515(d), and on May 13, 2009, Plaintiff filed a request to have the denial of its application for review set aside pursuant to 19 U.S.C. § 1515(c). Summons, ECF No. 1; Def. Cross-Mot. at 10, n.3. Dropped in a footnote in its Summons but not expanded upon in its motion, Plaintiff claimed that the completion of the 180-day statute of limitations clock was tolled due to Customs' failure

Court No. 09-00455                                                                 Page 8

to respond to its requests to set aside the denial of its protest and the denial of its application for review.[4] *Id.* Defendant countered that Plaintiff inserted this claim in its Summons because Plaintiff "[a]pparently recogniz[ed] that jurisdiction would not attach to these entries due to filing the summons after 180 days had passed"; however, Defendant asserted that Plaintiff's claim has "no impact on the 180-day period for filing a summons and section 1515 provides no tolling mechanism." Def. Cross-Mot. at 10, n.3. The Court notes that 19 U.S.C. § 1515(c) explicitly mandates that the 180-day period for commencing an action in the Court of International Trade is triggered by the initial denial of the protest for statute of limitations purposes. Thus, the Court finds that commencement of this action in relation to Protest Number 0401-09-100048 is barred by the statute of limitations and determines that it lacks jurisdiction over the ten entries covered by Protest Number 0401-09-100048.

    2.    **Protest Number 2704-09-100996**

Defendant raises a Constitutional defense for Protest Number 2704-09-100996. A federal court's jurisdictional reach has Constitutional limitations: an action must present a case or controversy to be heard. U.S. CONST. Art III, § 2. Precedent has established three elements to satisfy the Constitutional requirement of case or controversy: a plaintiff (1) must have suffered an injury in fact (2) that is caused by the conduct

---

[4] See the asterisk note on page 2 of the Schedule of Protests included in its Summons, ECF No. 1. See also Defendant's Exhibit 3 to its cross-motion.

complained of and (3) that is "likely" be "redressed by a favorable decision." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff, as the party invoking jurisdiction, bears the burden of establishing these factors. *Id.* at 561.

Defendant asserts that the eleven entries covered by Protest Number 2704-09-100996 were accidentally and incorrectly liquidated at Plaintiff's proposed classification at a duty free rate. Def. Cross-Mot. at 8–9. Because liquidation occurred at a duty free rate, Customs argues that Plaintiff suffered "no injury in fact" as to these eleven entries as required by the case or controversy doctrine. *Id.* at 8-9. The Court agrees that Plaintiff suffered no injury as to these eleven entries. Thus, the Court finds that there is no case or controversy as to these entries and determines that it lacks jurisdiction over the eleven entries covered by Protest Number 2704-09-100996.

       3.    **Protest Number 2704-09-100924**

Defendant does not challenge jurisdiction for Protest Number 2704-09-100924, which was timely commenced. Plaintiff claims injury caused by Customs' improper liquidation at a 11.2% duty rate and seeks redress in the Court. Thus, the Court determines it has jurisdiction over the three entries (277-0116601-2, 277-0116682-2 and 277-0119690-2) covered by Protest Number 2704-09-100924.

   **B.**    **Proposed Classifications**

Customs classified the subject merchandise under subheading 2004.90.85,

Court No. 09-00455                                                              Page 10

HTSUS, which provides for "Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, frozen, other than products of heading 2006: Other vegetables and mixtures of vegetables: Other: Other, including mixtures," with a duty rate of 11.2%. Def. Cross-Mot. at 3. Defendant explains:

> Neither the inclusion of non-vegetable ingredients nor the process of coating the vegetables in tempura batter and then frying them serves to remove the [subject merchandise] from classification in Heading 2004. . . . long-standing precedent on the subject of prepared or preserved food products indicates that products undergoing various processes (including frying) and containing added ingredients fall squarely within the tariff provision for products that are "prepared or preserved."

Def. Cross-Mot. at 13. While conceding that the vegetables used in the subject merchandise are processed with tempura batter, Defendant asserts that the vegetables "retain[] the same nature and the same use for edible consumption as the vegetables prior to processing" (Def. Facts ¶¶ 3, 7), and thus belong under the specific tariff provision for prepared mixed vegetables and not Plaintiff's proposed basket provision for "food preparation" (Def. Cross-Mot. at 5-6).

Plaintiff contends that the manufacturing process does indeed change the nature of the products from a vegetable mixture to food preparation. *See* Pl. Mot. at 6-7. Plaintiff argues that the proper classification of the products is HTSUS subheading 2106.90.99, which provides for "Food preparations not elsewhere specified or included: Other: Other: Other: Frozen," with a duty free preference for products from Thailand.

See HTSUS, General Notes 3(a)(iii), 3(c)(i), 4(a); see also HTSUS Heading 2106. Plaintiff asserts its proposed classification is more specific than Defendant's proposed classification because "food preparations not elsewhere specified or included, provides a more specific description of the imported goods when considering the principle use of the imported goods as food preparations." Pl. Mot. at 9. Defendant counters that because a more specific heading is applicable, Plaintiff's use provision argument in support of its basket provision classification is rendered moot. See Def.'s Reply Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Further Support of Def.'s Cross-Mot. for Summ. J. ("Def. Reply") at 5.

### C.  GRI Analysis

Classification of merchandise is governed by the General Rules of Interpretation ("GRIs"). *Avenues in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005). The GRIs direct "the proper classification of all merchandise and are applied in numerical order." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). The Court may not consult any subsequent GRI unless the proper classification cannot be determined by reference to GRI 1. *Mita Copystar Am. v. United States*, 160 F. 3d 710, 712 (Fed. Cir. 1998). The analysis always starts with GRI 1, which provides "classification shall be determined according to the terms of the headings and any relative section or chapter notes." Tariff terms are construed in accordance with their

common or popular meaning. *Medline Indus., Inc. v. United States*, 62 F.3d 1407, 1409 (1995).

The Court first considers heading 2004, HTSUS, which provides for "Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, frozen, other than products of heading 2006." This heading is an *eo nomine* classification provision, which "describes a commodity by a specific name." *Clarendon Marketing, Inc. v. United States*, 144 F.3d. 1464, 1467 (Fed. Cir. 1998). Bird's Nests are comprised of julienned carrots, onion and kale, which are mixed together, dipped in tempura batter, deep fried, flash frozen and packaged eight in a retail tray. Def. Cross-Mot. at 2. Vegetable Medley consists of eighteen pieces of tempura vegetables or vegetable mixtures: three Bird's Nests, three pieces of sweet potato, three pieces of carrot, three pieces of wing bean, three pieces of long or green bean, and three pieces of eggplant, which are dusted with flour and salt, dipped in tempura batter, deep fried, flash frozen and packaged in a retail box. *Id*.

To *prima facie* fall under heading 2004, HTSUS five criteria must be met: the products must be (1) vegetables that are (2) prepared or preserved, (3) otherwise than by vinegar or acetic acid, which are (4) frozen, and are (5) other than products of heading 2006, HTSUS. Both the Bird's Nests and the Vegetable Medley satisfy all five criteria: they are (1) vegetables that are (2) prepared (3) in tempura batter, not in vinegar

Court No. 09-00455                                                                                  Page 13

or acetic acid, which are (4) flash frozen, and are (5) not products preserved by sugar as provided for by heading 2006, HTSUS. Thus, the Court finds that the subject merchandise *prima facie* falls under heading 2004, HTSUS.

Next, the Court considers heading 2106, HTSUS, which provides for "Food preparations not elsewhere specified or included." To *prima facie* fall under heading 2016, HTSUS, two criteria must be met: the products must be (1) a food preparation, which is (2) not elsewhere specified or included. Both Bird Nests and Vegetable Medley satisfy the first criterion, but not the second: they are (1) a food preparation by common meaning, but they are (2) elsewhere specified or included. Because they are classifiable under heading 2004, HTSUS, Bird's Nests and Vegetable Medley do not satisfy the second criterion of "not elsewhere specified or included." Thus, the Court finds that the products do not *prima facie* fit under heading 2106, HTSUS, which is an expansive basket heading that only applies in the absence of another applicable heading.

In support of its position, Plaintiff referenced two ruling letters as support for its proposed classification: (1) Ruling Letter NY 815439 (Oct. 26, 1995) and (2) Ruling Letter N004522 (Jan. 12, 2007). Pl.'s Mot. at 6-7. Ruling Letter NY 815439 involves classification of fruit and vegetable chips from China and Taiwan while Ruling Letter N004522 involves frozen hors d'oeuvres from Canada. The Court finds both of those Ruling Letters inapposite because the subject merchandise discussed in those ruling

letters—chips made from a combination of fruits and vegetables and hors d'oeuvres made from various ingredients including water, cheeses, oils, wheat crumbs and flour, corn starch, batter, spices, salt, flavorings, alcohol, color and sorbic acid—are not substantially similar to the tempura vegetable products at issue.

The Court reviewed ruling letters regarding other tempura-coated products, such as shrimp. For example, Customs classified tempura shrimp products under a provision for prepared shrimp. *See* Ruling Letters N138762 (Jan. 6, 2011), NY L80717 (Dec. 14, 2004). It appears that Customs has consistently classified tempura-coated products by the underlying main food dipped into the tempura batter, not as a food preparation. Therefore, the existing ruling letters lend credence to Customs' proposed classification for frozen prepared vegetables over Plaintiff's proposed basket provision for food preparations.

Defendant mentions another heading to be considered. Defendant raises the point that the sweet potatoes in the Vegetable Medley may belong under a different heading in Chapter 20. Def. Cross-Mot. at 14, n.8. An Explanatory Note to heading 2008 indicates that heading 2008 includes "[s]tems, roots and other edible parts of plants (e.g., ginger, angelica, yams, <u>sweet potatoes</u> . . . .) conserved in syrup or otherwise prepared or preserved." WCO, Explanatory Note (7) to Heading 2008 (Supp. 9 to 2007 Ed.) (emphasis added). Heading 2008, HTSUS, provides for "fruits, nuts and other

edible parts of plants, otherwise prepared or preserved, whether or not containing added sugar or other sweetening matter or spirit, not elsewhere specified or included."

First, the Court notes that the Explanatory Notes are "not legally binding or dispositive, but they may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions." *Benq America Corp. v. United States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011) (citations omitted). Next, the Court acknowledges that the subject merchandise at issue is not mere sweet potatoes but rather tempura-coated vegetables or vegetable mixtures of which only one of the two products includes three pieces of sweet potato, a mere 16 percent of the vegetable mixture. Contemplating the product as a whole, a reasonable mind could not consider the subject merchandise a sweet potato. It is, rather, a mixed vegetable product in which sweet potatoes do not dominate.

Assuming, *arguendo*, that the sweet potatoes did constitute a significant percentage or value of the Vegetable Medley, the Court analyzes the terms of heading 2008, HTSUS, to comprehensively consider all the possible tariff provisions. To *prima facie* fall under this classification three criteria must be met: the products must be (1) fruits, nuts or other edible parts of plants, (2) otherwise prepared or preserved, which are (3) not elsewhere specified or included. The Vegetable Medley arguably satisfies the first two criteria but not the third: while not a fruit or nut, it could colorably be

Court No. 09-00455                                                                                          Page 16

considered (1) an other edible part of a plant and it is certainly (2) prepared in tempura batter. However, as with Plaintiff's proposed classification, this classification is nixed from consideration by the phrase (3) "not elsewhere specified or included." Because it was found to fit under heading 2004, HTSUS, Vegetable Medley cannot fall under the rubric of a basket provision, which was the same fate that befell heading 2106, HTSUS. Thus, the Court finds that the products do not *prima facie* fall under heading 2008, HTSUS.

The Court finally examines the one applicable heading, 2004, for the proper subheading. Upon review of the possible subheadings under heading 2004, the Court finds that the proper subheading is 2004.90.85, HTSUS, which provides for "Other vegetables and mixtures of vegetables: Other." Therefore, the Court holds the correct tariff classification for the Bird's Nests and Vegetable Medley is subheading 2004.90.85, HTSUS.

## CONCLUSION

Since there is no dispute between the parties as to the nature of the merchandise involved in this case and the only issues to be resolved are legal, the case is ripe for disposal at the summary judgment stage. *See, e.g., Value Vinyls, Inc. v. United States*, 31 CIT 173, 175, 2007 WL 273839 at *2 (2007) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986)). The Court affirms Defendant's preferred tariff classification of

2004.90.85, HTSUS, for entries 277-0116601-2, 277-0116682-2 and 277-0119690-2 for which jurisdiction lies. Therefore, Plaintiff's Motion for Summary Judgement is denied and Defendant's Cross-Motion for Summary Judgment is granted. Judgment will enter accordingly.

                                                             /s/ Gregory W. Carman
                                                            Gregory W. Carman, Judge

Dated: December 14, 2012
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| R.T. FOODS, INC.,<br><br>  Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>  Defendant. | Before: Gregory W. Carman, Judge<br><br>Court No. 09-00455 |

### JUDGMENT

This case having been duly submitted for decision; and the Court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision, it is hereby

**ORDERED, ADJUDGED AND DECREED** that Defendant United States' Cross-Motion for Summary Judgment is granted and Plaintiff R.T. Foods, Inc.'s Motion for Summary Judgment is denied; and it is further

**ORDERED** that Customs' classification of the subject merchandise under subheading 2004.90.85, HTSUS, is sustained; and it is further

**ORDERED** that judgment is awarded to Defendant United States.

/s/ Gregory W. Carman  
Gregory W. Carman, Judge

Dated: December 14, 2012  
New York, New York